## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**RYAN ALLOR**,

                    Plaintiff,

                                            No. 2:13-cv-11142

vs.                                  Hon. Gerald E. Rosen

**ECA MARKETING, INC.** and
**MATT HOLMBECK**,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

### I. INTRODUCTION

On March 14, 2013, Plaintiff Ryan Allor filed his two-count Complaint against Defendants ECA Marketing, Inc. and Matt Holmbeck for allegedly attempting to run Plaintiff out of the insurance sales business. Defendants have now moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Procedure 12(b)(2) and 12(b)(6). Having reviewed and considered Defendants' Motions and supporting briefs, Plaintiff's response thereto, and the entire record of this matter, the Court has determined that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Therefore, the Court will decide

1

this matter "on the briefs."  See Eastern District of Michigan Local Rule 7.1(f)(2).

The Court's Opinion and Order is set forth below.

## II. PERTINENT FACTS

Plaintiff is a Michigan citizen and a former insurance agent for non-party Retirement Strategies, Inc. (RSI).  (Plf's Compl., Dkt. # 1, at ¶¶ 1, 6).  Defendant ECA Marketing, Inc. (ECA) is an insurance broker and marketing firm.  (Ex. I to ECA's Mtn., Dkt. # 8-10, at ¶ 2).  ECA is a Minnesota corporation, with offices in Eden Prairie, Minnesota.  (Id. at ¶ 3; Plf's Compl., Dkt. # 1, at ¶ 1).  Defendant Matt Holmbeck is a Minnesota resident and is employed by ECA.  (Plf's Compl., Dkt. # 1, at ¶¶ 1, 7).

ECA provides a variety of marketing and other services to insurance agencies like RSI; it is a "conduit" or "go between" for agents and insurance agencies, providing them with various information concerning insurance-related products.  (Ex. I to ECA's Mtn., Dkt. # 8-10, at ¶¶ 2, 4, 5, 7).  As one of ECA's employees, Holmbeck provides these services across the country, including to those financial professionals and agents in Michigan.  (Ex. B to Holmbeck's Mtn., Dkt. # 11-3, at ¶ 4-5).  Defendants do not sell insurance products to individual clients.  (Id. at ¶ 5; Ex. I to ECA's Mtn., Dkt. # 8-10, at ¶ 5).  Rather, they introduce and position annuities and insurance products to these financial professionals and agents.  (Ex. B to Holmbeck's Mtn., Dkt. # 11-3, at ¶ 4).  When

2

an agent sells insurance, the agent does so directly through the insurance carrier. ECA then "recoups" a certain portion of the sale from the insurance carrier (known as an "override commission").  (*Id.* at ¶ 5; Ex. I to ECA's Mtn., Dkt. # 8-10, at ¶ 5).

Plaintiff formerly worked as an independent insurance agent for RSI until his termination from employment in August 2012.  (Plf's Compl., Dkt. # 1, at ¶ 6). During Plaintiff's employment with RSI, Plaintiff interacted with ECA, and more specifically, Holmbeck.   It is in this relationship -- both before and after his termination from RSI -- that Plaintiff bases his two-count Complaint.

His first Count asserts a violation of Michigan public policy.  This claim apparently rests on a call Plaintiff placed to Holmbeck after RSI terminated Plaintiff's employment, where he advised that he was going to be "running his own agency and wanted to continue placing clients with . . . [ECA]'s insurers."  (Plf's Compl., Dkt. # 1, at ¶ 7).  According to Plaintiff, Holmbeck then contacted two individuals at RSI and subsequently advised Plaintiff that "not only would Holmbeck not allow [P]laintiff to use ECA Marketing, Inc., but would not release . . . [P]laintiff as an agent of ECA" (and thus Plaintiff could not work with another marketing company).  (*Id.* at ¶ 8).  Upon receiving this news, Plaintiff then called ECA's Vice President, "Stephaninie (sic) Dahl," to "report what he believed to be a violation of a rule or law concerning the non-release" and indicated that "he was

3

about to make a complaint to the Michigan Department of Insurance[1] about the violation." (*Id.* at ¶ 9). Defendants then retaliated against Plaintiff by "conspir[ing] to keep all insurance companies from appointing [P]laintiff as an [insurance] agent within the United States and to put . . . [P]laintiff out of business." (*Id.* at ¶ 11). For example, ECA specifically told another insurance company, Fidelity and Guarantee Insurance (F & G), to terminate Plaintiff as an agent, which it did. (*Id.* at ¶ 10).

Plaintiff's second Count asserts that Defendants retaliated against him for reporting insurance fraud. According to Plaintiff, Holmbeck contacted him several times in 2011 and 2012, instructing him to "move [his] clients out of Athene Holding [Insurance Company]" and to "move the money to the client's personal checking account and avoid any and all transfer paperwork." (*Id.* at ¶¶ 14-15). Holmbeck also conspired to have "all policies with North American [Insurance] written through" Plaintiff instead of through other ECA agents because two of ECA's employees had been "banned from selling North American Insurance for forgery of insurance documents." (*Id.* at ¶ 17). Holmbeck then paid these individuals commission on these sales "despite the fact that they could not sell North American policies." (*Id.* at ¶ 18). Such incidents, according to Plaintiff, "constitute[d] insurance fraud," which he reported to the Michigan Department of

---

[1] The full name of this agency is the Michigan Department of Insurance and Financial Services.

Insurance.  (*Id.* at ¶ 19).  Defendants retaliated in the same manner that he alleges in his public policy claim: Holmbeck tried to remove him as an agent for insurance companies, including with F & G.  (*Id.* at ¶¶ 20-21).

Defendants have now filed similar motions to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  Because this Court finds that personal jurisdiction is lacking in this matter, this Court dismisses Plaintiff's Complaint with prejudice pursuant to 12(b)(2) and declines to rule as to whether Plaintiff has stated claims upon which relief may be granted.

### III. DISCUSSION

**A.    Standard for motions for lack of jurisdiction under Rule 12(b)(2)**

Although this matter is before the Court on Defendants' Motions to Dismiss, a plaintiff has the burden of establishing that the exercise of jurisdiction over the defendant is proper.  *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002). Where, as here, there has been no evidentiary hearing regarding personal jurisdiction, a plaintiff "need only make a prima facie showing of jurisdiction." *Id.* (quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996)).  "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991).  The court must then consider all

the facts presented in the pleadings and affidavits in a light most favorable to a plaintiff, and does not weigh any contrary allegations offered by the defendant. *Intera Corp. v. Henderson,* 428 F.3d 605, 614 (6th Cir. 2005).

**B.    Plaintiff has failed to make a *prima facie* showing of the Court's personal jurisdiction over Defendants**

"[P]ersonal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002) (quotations omitted).  Under Michigan law, a Michigan forum may assert either general or limited jurisdiction over non-resident corporations or individuals.  *See* M.C.L. §§ 600.701; 600.705; 600.711; 600.715. The Michigan Supreme Court construes Michigan's long-arm statute to bestow the broadest possible grant of personal jurisdiction consistent with due process. *Sifers v. Horen*, 385 Mich. 195, 199-200 (1971).  Plaintiff does not claim that general personal jurisdiction over Defendants exists; therefore, the Court will only consider whether it may exercise limited personal jurisdiction over Defendants.[2]  Because

---

[2]  In passing, Plaintiff claims that both Defendants were "amenable to service" because their attorneys filed appearances -- which were not "of a limited nature" -- in this matter.  (Plf's Resp., Dkt. # 13, at 4).  To the extent Plaintiff referenced this to argue that Defendants waived their ability to challenge jurisdiction, this argument is not persuasive.  In order "to waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Gerber v.*

6

this Court finds that personal jurisdiction does not comport with due process, this Court declines to separately consider whether Michigan's long-arm statute would permit the exercise of personal jurisdiction over Defendants.

Plaintiff must make a *prima facie* showing that the exercise of personal jurisdiction does not offend due process. *CompuServe,* 89 F.3d at 1262. He must demonstrate that Defendants have sufficient "minimum contacts" with Michigan such that finding personal jurisdiction will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Minimum contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Further, it is necessary that the defendant "purposefully avail himself of the privilege of conducting activities within the forum state, thus invoking the

---

*Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (citation omitted). Courts must consider "all of the relevant circumstances" when evaluating a claim of forfeiture of a personal jurisdiction defense. *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012). That Defendants entered appearances in this matter through this Court's CM/ECF system and then moved to dismiss Plaintiff's Complaint on jurisdictional grounds cannot constitute such a waiver under these circumstances. *See also Chencinski v. Murga*, 2013 WL 3810344, at *2-4 (E.D. Mich. July 23, 2013) (Cleland, J.) (describing a similar argument as "particularly problematic and troublesome"). Moreover, the Court notes that the Sixth Circuit has rejected Plaintiff's reference to the fact that neither appearance was "of a limited nature." *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002) ("In order to object to a court's exercise of personal jurisdiction, it is no longer necessary to enter a 'special appearance.'"). Accordingly, Defendants have not waived their right to challenge this Court's jurisdiction.

benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

To satisfy the due process requirements for limited or specific jurisdiction, the Sixth Circuit has articulated a three-part test, commonly referred to as the *Southern Machine* test:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable.

*Neogen*, 282 F.3d at 889-90 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)).  Failure to meet any one of the three prongs of the *Southern Machine* test means that personal jurisdiction may not be invoked.  *Lak, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1303 (6th Cir. 1989).

Defendants submitted various documents in support of their Motions to Dismiss,[3] including affidavits setting forth sufficient facts barring Plaintiff's ability

---

[3]  Given the Court's conclusion below regarding purposeful availment, consideration of the other materials attached to Defendants' Motions is not necessary.  That said, the Court is compelled to briefly mention two attachments that apparently completely contradict Plaintiff's Complaint.  First, a print out from Michigan's Department of Licensing and Regulatory Affairs website shows that Plaintiff has continued his relationships -- or at least is eligible to do so -- with the various insurance companies he asserts Defendants blackballed him from pursuing. (Ex. F to ECA's Mtn., Dkt. # 8-7).  Second, ECA expressly allowed Plaintiff to work with other insurance companies following his termination from RSI.  (Ex. H

8

to establish jurisdiction in this case.  (Ex. I to ECA's Mtn., Dkt. # 8-10; Ex. B to

Holmbeck's Mtn., Dkt. # 11-3).  These facts include:

- ECA is not registered as a foreign corporation in Michigan, has no physical presence in the State of Michigan, no offices in Michigan, and no officers or employees who work in Michigan.  (Ex. I to ECA's Mtn., Dkt. # 8-10, at ¶ 3);[4]
- ECA does not sell insurance.  Rather, all sales in Michigan are made by agents who contract directly with the insurance carriers.  (*Id.* at ¶ 5);
- ECA does not advertise in Michigan.  (*Id.* at ¶ 4);
- ECA does not provide services to any independent agencies in Michigan; it only provides training to independent agencies in Minnesota.  (*Id.* at ¶ 6);
- ECA had no formal relationship with Plaintiff other than through RSI.  All of ECA's communications with RSI and those communications alleged in the Complaint arose in Minnesota.  (*Id.* at ¶ 7);
- Holmbeck does not sell insurance.  (Ex. B to Holmbeck's Mtn., Dkt. # 11-3, at ¶ 5);
- Holmbeck never travelled to Michigan to work with RSI, Plaintiff, or any other agency, firm, or other similar entity.  (*Id.* at ¶ 8);
- Holmbeck has only been to Michigan twice -- both times as part of a lay-over in an airport.  Holmbeck has not obtained, or sought, licensure or credentialing in Michigan and does not now, nor has he ever, owned any real or personal property or bank accounts in Michigan.  (*Id.* at ¶ 9); and
- All of Holmbeck's communications regarding his interactions with RSI and Plaintiff were through phone calls, emails, or other written communications.  (*Id.* at ¶ 8).

---

to ECA's Mtn., Dkt. # 8-9).  Surprisingly, Plaintiff's Response fails to address these documents.  Though not relevant for the Court's present inquiry, these documents certainly raise serious issues regarding the viability of Plaintiff's claims.

[4] ECA has a non-residence insurance license from the Michigan Department of Insurance and Financial Services.  (Ex. I to ECA's Mtn., Dkt. # 8-10, at ¶ 4).  ECA maintains a non-residence insurance license to ensure that it is paid for its services by an insurance carrier; insurance carriers require ECA to carry this license in states in which it acts as an intermediary.  (*Id.*).  If ECA does not carry this license, they will not pay ECA "override commissions" for the sale of insurance products.  (*Id.*).

Plaintiff did not submit a counter-affidavit.  Instead, he attached a document showing that ECA and Holmbeck were on RSI's speed dial, as well as a "Contract Application" for "North American Company for Life and Health Insurance."  (Exs. A and B to Plf's Resp., Dkt. # 13-2, 13-3).  Therefore, this Court will consider Plaintiff's Complaint, the documents (including the affidavits) attached to Defendants' Motions, and the documents attached to Plaintiff's Response in determining whether Plaintiff has established a *prima facie* showing of personal jurisdiction over Defendants.[5]  As set forth below, Plaintiff has failed to do so. *See, e.g*, *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1237 (6th Cir. 1981) ("Chrysler did not submit counter-affidavits and, as the trial court pointed out, offered no reason to doubt any of the statements in [the defendant]'s affidavits. Under these circumstances we hold that Chrysler's totally unsupported allegations . . . cannot constitute sufficient contacts with Michigan to justify an exercise of personal jurisdiction over [the defendant] by the District Court.").

---

[5] Accordingly, this Court declines to consider the various unverified statements contained in Plaintiff's Response.  *See also Societe Nouvelle Generale de Promotion v. Kool Stop Int'l, Inc.*, 633 F. Supp. 153, 154 (E.D. Pa. 1985) ("After a jurisdictional defense is properly raised, the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court *in personam* jurisdiction.  On this record plaintiff has not met that burden; statements in plaintiff's response, whether in the answer to the motion or the brief, are not supported by affidavit.  Unsworn statements of an attorney are not matters of record and are insufficient to counter the sworn assertions of defendants.") (internal citation omitted).

10

## 1.    Purposeful Availment

Purposeful availment is the "constitutional touchstone" of personal jurisdiction, and is present where a defendant's contacts with the forum state "proximately result from action by the defendant himself that creates a substantial connection with the forum state." *Neogen,* 282 F.3d at 889 (quoting *Burger King,* 471 U.S. at 475).   The defendant must engage in intentional, purposeful contact with the forum state which invokes the "benefits and protections" of the forum laws. *Burger King*, 471 U.S. at 475-76 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).   Stated another way, purposeful availment requires that there be a substantial connection between the defendant's conduct and the state which would cause the defendant to reasonably anticipate being haled into court in that jurisdiction and that the contact must not be "random, fortuitous, or attenuated or [based on] the unilateral activity of another party or third person." *Id.* at 474-75. Purposeful availment, therefore, is only satisfied by "something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can properly be regarded as a prime generating cause of the effects resulting in Michigan, something more than just a passive availment of opportunities." *The Sports Auth. Mich., Inc. v. Justballs, Inc.,* 97 F. Supp. 2d 806, 811 (E.D. Mich. 2000).

11

Here, Plaintiff's Complaint makes clear that Defendants' connection to this state begin and end with telephone calls and written correspondence to and from Plaintiff during and after his employment with RSI.   The Sixth Circuit has emphasized that telephone calls, letters, and faxes, standing alone, are "precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected." *LAK,* 885 F.2d at 1301; *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 151 (6th Cir.1997) (defendant's telephone calls and faxes to the Michigan plaintiff were "immaterial" to the question whether the defendant had reached out to Michigan).   Moreover, there is no "talismanic significance" to a specific "numerical count of the calls and letters" exchanged between the forum-based plaintiff and the non-resident defendant.  *LAK,* 885 F.2d at 1301.  Rather, the *quality* of the contacts, and not their *quantity*, is the issue in demonstrating purposeful availment.  *Id.*

Based upon these principles, the Court easily concludes that Defendants' contacts with Michigan are too attenuated given Plaintiff's claims and facts supporting *these* claims to justify a finding of purposeful availment.   Despite pleading facts typically consistent with liability under a traditional business tort, Plaintiff's Complaint makes clear that he only claims violations of Michigan public policy and Sarbanes-Oxley.   The purported merit of these claims are dubious at

best;[6] but more fundamentally, they do not support a finding of jurisdiction.  None of the facts Plaintiff asserts support his two "retaliation" claims suggest that Defendants purposefully availed themselves in Michigan.  Though ECA had a business relationship with RSI and therefore interacted with Plaintiff,[7] there is no

---

[6] First, Plaintiff's "public policy" retaliation claim reads as if it is pled under the *Suchodolski* line of cases concerning certain "public policy" exceptions to Michigan's "at-will" employment doctrine.  *See, e.g, Suchodolski v. Mich. Con. Gas. Co.*, 412 Mich. 692 (1982).  Here, Defendants were not Plaintiff's *employers* and Plaintiff has put forth no argument indicating that *Suchodolski's* exception for retaliation in violation of public policy extends outside the employment realm.  Second, his "retaliation for reporting insurance fraud" claim is apparently predicated upon Section 1107 of Sarbanes-Oxley.  (Plf's Resp., Dkt. # 13, at 9-10).  Codified at 18 U.S.C. § 1513(e), Section 1107 provides as follows:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

Plaintiff does not detail, however, how his "report" to the "Michigan Department of Insurance" constitutes a report to a "law enforcement officer" as defined in 18 U.S.C. § 1515(a)(4) or even whether Section 1107 provides him with a private right of action.  *See, e.g, Hines v. Cal. Pub. Util. Comm'n*, 2010 WL 4691652, at *5 (N.D. Cal. Nov. 8, 2010) (plaintiff failed to state a claim because Section 1107 of Sarbanes-Oxley does not contain a private right of action and because plaintiff made a report to a state agency, which is not a "law enforcement officer").

[7] Plaintiff's two exhibits attached to his Response do not support a *prima facie* finding of jurisdiction.  First, Plaintiff produced a phone list indicating that RSI had ECA and Holmbeck on speed dial.  Viewing this in a light most favorable to Plaintiff, all this list indicates is that a Michigan company and its employees called a Minnesota company and its employees.  It bears no weight in terms of the *quality* of Defendants contacts with Michigan.  *See also Kerry Steel*, 106 F.3d at 151 ("The mere fact that Paragon entered into a contract with a Michigan corporation

13

evidence that Defendants conducted business in Michigan. ECA does not have any employees or offices in Michigan and there has been no showing that any ECA employee -- including Holmbeck -- has ever been in Michigan for the purposes of transacting business here. Defendants do not sell insurance or advertise in Michigan. Instead, they act as informational and marketing conduits between RSI's employees -- like Plaintiff -- and insurance carriers. And, as noted above, the parties' various communications -- mostly initiated by Plaintiff -- narrowly limit the scope of their relationship. *Lak,* 885 F.2d at 1301. Stated differently, "there is no reason to suppose that [Defendants] . . . intended to lay [themselves] open to liability 'in every state of the union'" every time they facilitated insurance sales between agents and insurance companies." *Id.* (citation omitted). Accordingly, Plaintiff cannot satisfy purposeful availment.

---

does not mean that Paragon purposefully availed itself of the 'benefits and protections' of Michigan law."). Second, Plaintiff's contract with North American Company for Life and Health Insurance, a company that is apparently located in Iowa, provides no relevant information concerning Defendant's contacts with Michigan. For that matter, that Defendants apparently helped Plaintiff become an agent of various insurance companies across the United States, without more, does not mean that Defendants purposefully availed themselves in Michigan. Finally, though Plaintiff did not address it, ECA's non-residence license is so tangential in this circumstance to render a finding of purposeful availment inappropriate. *Cf Thompson v. Diamond State Ins. Co.*, 2007 WL 654337, at *3 (E.D. Tex. Feb. 27, 2007).

## 2.     Arising from Defendants' Activities and Reasonableness

The second requirement of the *Southern Machine* test is that "the cause of action must arise from the defendant's activities" in Michigan.  The third prong of the *Southern Machine* test mandates that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."  *Youn v. Track, Inc.,* 324 F.3d 409, 419 (6th Cir. 2003) (citation omitted).  Where, as here, a plaintiff fails to demonstrate a sufficient level of contacts to satisfy the purposeful availment prong, it is unnecessary for a court to consider the other two requirements as "each criterion represents an independent requirement and failure to meet any one of the three means that personal jurisdiction may not be invoked."  *Lak,* 885 F.2d at 1303; *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1275 (6th Cir. 1998) (where there is no purposeful availment, there is no reason for the court to analyze the defendant's in-state activities to determine whether the "arising from" requirement is met).  Because Plaintiff cannot satisfy the purposeful availment prong, this Court need not address the other prongs.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant ECA Marketing, Inc's Motion to Dismiss [Dkt. # 8] is GRANTED.

IT IS FURTHER ORDERED that Defendant Matt Holmbeck's Motion to Dismiss [Dkt. # 11] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**


Dated:  December 23, 2013                s/Gerald E. Rosen
                                         GERALD E. ROSEN
                                         CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 23, 2013, by electronic and/or ordinary mail.

                                         s/Julie Owens
                                         Case Manager, 313-234-5135

16